**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellant,**

v.

**LA CAFFE, INC.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1996.

Decided March 6, 1996.

James A. Saylor, Assistant Counsel, for Appellant.

William B. Morrin, for Appellee.

Before DOYLE and FRIEDMAN, JJ., and MIRARCHI, Senior Judge.

MIRARCHI, Senior Judge.

The Bureau of Liquor Control Enforcement (Bureau) appeals a Philadelphia County Court of Common Pleas order granting an appeal by La Caffe, Inc. (La Caffe) of a $250.00 fine imposed on it under Pennsylvania's Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1–101—8–803.

La Caffe is a corporate licensee under the Liquor Code with an establishment in Philadelphia. In January 1993, a Bureau enforcement officer observed Peter Latigona, the sole corporate officer of La Caffe, exiting a liquor store in New Jersey with four cartons of liquor and beer. The officer observed Latigona place the cartons into a passenger vehicle. He then followed the vehicle into Pennsylvania, where he stopped it. Latigona is a New Jersey resident and the vehicle is registered in New Jersey.

La Caffe was cited for violating, by its agent or employee, Sections 491(2) and (3) of the Liquor Code, 47 P.S. §§ 4–491(2), (3). Those sections provide that it is unlawful for any person to possess and/or transport within the Commonwealth liquor obtained from a source other than a Commonwealth State Store, 47 P.S. § 4–491(2), and for any person within the Commonwealth, by himself or by an employee or agent, to obtain liquor from a source other than a Commonwealth State Store. 47 P.S. § 4–491(3). Pursuant to Section 471 of the Liquor Code, 47 P.S. § 4–471, "[u]pon learning of any violation of this act ... by any licensee ... his officers, servants, agents or employes, or upon any other sufficient cause shown, the enforcement bureau may ... cite such licensee to appear before an administrative law judge [ALJ] ... to show cause why such license should not be suspended or revoked or a fine imposed, or both." An ALJ sustained the citation based on a violation of the Liquor Code and imposed the $250.00 fine. La Caffe appealed to

the Liquor Control Board (Board), which affirmed the ALJ's decision.

La Caffe then appealed to the trial court, which, analyzing the record before the ALJ on a *de novo* basis, reversed the Board's decision. The court reasoned:

> Briefly, only one issue was seriously contested: Was Mr. Latigona, who purchased liquor out-of-state, acting as a father as opposed to an agent of La Caffe, Inc.? Because I was convinced that he purchased the liquor for his son's wedding, I concluded that he was performing *parental* duties, as opposed to commercial ones. Withal, I declined to impute his conduct to the licensee. (Emphasis in original). (Footnote omitted).

*La Caffe, Inc. v. Pennsylvania State Police, Bureau of Liquor Control Enforcement* (No. 9408–0021, filed April 19, 1995). The court also noted that the "liquor was not the type regularly served at the Licensee's establishment. Instead, the type (and quantity) had been specified (and paid for) by the bride (or, perhaps, by the bride's family)." *Id.* The Bureau now appeals to this Court.

The sole issue raised in this appeal is "[w]hether or not the Licensee is subject to sanctions under the Liquor Code regardless of whether the Licensee was acting in his capacity as an individual or in his capacity as a licensee." (Appellant's brief, p. 3).

The Bureau argues that the trial court erred because Latigona's intent is irrelevant under sections 491(2) and (3). It contends that the prohibition of those sections applies to "any person," and that the Liquor Code employs a strict liability standard. *Hospitality Investments of Society Hill, Inc. v. Commonwealth*, 121 Pa.Cmwlth. 486, 551 A.2d 341 (1988). It claims that a violation by a licensee occurs regardless of whether the licensee knew or should have known of the misconduct and irrespective of whether the violation occurs on or off the licensee's premises. 47 P.S. § 4–471; *Pennsylvania Liquor Control Board v. TLK, Inc.*, 518 Pa. 500, 544 A.2d 931 (1988); *Commonwealth v. Lyons*, 142 Pa.Superior Ct. 54, 15 A.2d 851 (1940). The Bureau also maintains that the "corporate fiction" here should be ignored because

it cannot shield "licensee" against strict liability for "his" actions away from the actual establishment.

La Caffe responds that the Bureau makes a fundamental error in its failure to distinguish La Caffe from Latigona. It argues that Latigona is not the licensee, but is instead an employee of the licensee and, thus, the Bureau must establish, and it did not, that the licensee engaged in conduct through its agent or employee. 47 P.S. § 4–471. La Caffe claims *Hospitality* and *TLK* are distinguishable in that they dealt with violations occurring on a licensed premises. It argues that strict liability does not apply off the premises, as it would be absurd to hold a licensee responsible for everything that an employee does off premises. In situations involving violations off premises, La Caffe maintains, there must be some showing that an employee was acting within the scope of his agency on behalf of a licensee. It also considers the Bureau to have relied on dicta from *Lyons* that is inapposite because the licensee and the actor were legally the same in that case. Further, La Caffe asserts that the Bureau's "corporate fiction" argument is waived because it was not properly raised before the trial court. In any event, La Caffe argues, there is no evidence supporting the exceptional relief of "piercing the corporate veil," because there was no evidence that the corporation was used to commit fraud or other such illegality.

We think La Caffe's arguments and the trial court's opinion are convincing and logical and, as confirmed by the following discussion, they lead us to dispose of this unique case in La Caffe's favor.

The Bureau apparently showed that *Latigona* would himself be strictly liable for his actions, despite any benign intentions, pursuant to sections 491(2) and (3). It is not disputed that, although La Caffe *qua* licensee took no action in this case, it could nevertheless be held liable for Latigona's violations if certain circumstances existed.

■ First, it might be liable according to the terms of the Liquor Code if Latigona had been acting on behalf of or otherwise in connection with his relationship to La Caffe. Clearly, as the trial court found, he was not.

■ Second, La Caffe could be liable if there were cause to "pierce the corporate veil" and treat both La Caffe and Latigona as one. However, it appears from the record, including the Bureau's statement of the matter complained of following the trial court's order, that this theory was not sufficiently raised by the Bureau before this appeal and, therefore, should be treated as waived. *See* Pa. R.A.P. 302. Instead of mentioning "piercing the corporate veil" or undertaking an analysis of that subject, the Bureau, the ALJ and the Board all too consistently referred to Latigona as the "licensee," who he simply is not, without specific justification. They almost exclusively relied on a strict liability rationale under the Liquor Code; they did not hold the fact that Latigona is La Caffe's sole corporate officer constituted "sufficient cause" to penalize La Caffe. The very nature of the original citation, stating that La Caffe "by [its] servants, agents or employes" unlawfully obtained, possessed and transported liquor, and even the Bureau's statement of the question involved here, quoted above, are indicative of these lapses. Moreover, the Pennsylvania Supreme Court has recently set forth the following well established principles:

> [T]here is a strong presumption in Pennsylvania against piercing the corporate veil.... 'Any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception.... Care should be taken on all occasions to avoid making the entire theory of corporate entity ... useless....' Also, the general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person.

*Lumax Industries, Inc. v. Aultman*, —— Pa. ——, 669 A.2d 893, 895 (1995) (citations omitted). Here, the Bureau did not raise or attempt to prove any specific or unusual circumstances warranting an exception to the general rule against piercing the corporate veil, which rule applies even if a corporation's stock is owned entirely by one person.

Under these circumstances, we will not now for the first time in these proceedings declare that a basic legal distinction—indeed, one that the Board itself recognized in issuing a license to La Caffe as opposed to Latigona—should be readily abandoned as the Bureau would have it. Thus, we agree with La Caffe that, at this stage, the Bureau's blurring of that legal distinction is indeed flawed.

Third, La Caffe could potentially be held vicariously liable for Latigona's violations. However, the Bureau does not present authority for doing so under the facts here. La Caffe accurately states that no decision addresses the precise variables in this case. There are a myriad of liquor license decisions involving one or more of the material facts presented here, but none seem to include all of them. Perhaps the most prevalent distinguishing fact is that, unlike this case, almost all of the cases involve violations—sometimes of the Liquor Code, sometimes involving penal law violations outside of the Code—occurring *on the licensee's premises.*

For example, in *Hospitality,* we sustained a license suspension where a Liquor Code violation consisting of an "all male [dance] review" took place on a licensee's premises, and held that whether the licensee knew or should have known of the violation was irrelevant. Given the facts there, that case only tells us here that, if Latigona had violated the Liquor Code on La Caffe's premises, which he obviously did not, La Caffe could be held strictly liable and a fine against it could stand.

*TLK,* which the Bureau most heavily relies upon, is also unavailing here. That case involved a license revocation under section 471, not for an employee's Liquor Code violation, but for "sufficient cause" under that section, where a licensee's employee arranged, on premises, to sell heroin. The Supreme Court, after determining that strict liability does not apply where there is penal law misconduct outside of the Liquor Code, affirmed the revocation because the licensee should have known of drug activity *at the licensee's establishment* and did not take substantial affirmative measures to prevent it. Thus, *TLK* would only be on point if

Latigona had committed a penal law violation not involving the Liquor Code on La Caffe's premises and La Caffe had been cited for "other sufficient cause shown"; in that hypothetical situation, La Caffe, although not strictly liable, might nevertheless be liable because it clearly would be held to have known of and condoned a violation by Latigona.

■ The remaining case emphasized by the Bureau is *Lyons.* However, the licensee there was himself the violator; they were one in the same both in law and in fact. That important factor was at the center of the decision to revoke the actor's license for multiple criminal law violations including gambling and bookmaking. That factor alone is enough to make the *Lyons* decision inapplicable here in light of our discussion above on piercing the corporate veil. The Superior Court's statement that, "[i]f the appellant had violated any liquor law, on or off the licensed premises, no doubt would exist as to the board's right to revoke the license," which statement is arguably dicta and not binding on this Court, is therefore not dispositive. *Lyons* at 57, 15 A.2d at 852. Further, the Superior Court's statement, made in 1940, predates the following statement of the Supreme Court:

[t]he intent of the legislature in enacting this Code was ... to place a very high degree of responsibility upon the holder of a liquor license to make certain that neither he nor anyone in his employ commit any of the prohibited acts *upon the licensed premises. Such a burden of care is imposed upon the licensee in order to protect the public from the potentially noxious effects of an inherently dangerous business.*

*Commonwealth v. Koczwara,* 397 Pa. 575, 584, 155 A.2d 825, 829–830 (1959), *cert. den.,* 363 U.S. 848, 80 S.Ct. 1624, 4 L.Ed.2d 1731 (1960) (emphasis added).

■ We take from *Koczwara* and the fact patterns of almost all liquor license cases that, when a licensee takes no action, but is nonetheless held liable for the actions of an agent or employee acting outside the scope of their agency or employment, it is at least

presumed that the liability is grounded on some nexus between the violative conduct and the licensee's establishment. This would comport with the most persuasive argument in this appeal that a licensee should not be held responsible for what its employees do off premises on their own behalf and unrelated to the relationship to the licensee, even if the licensee knows about it. Were we to reject the logic of that argument, strict liability under the Liquor Code would become a bootstrap to penalize liquor licensees based on the personal, off premises lives of their employees. Despite the "very high degree of responsibility upon the holder of a liquor license" recognized in *Koczwara,* we perceive no support for the proposition that the responsibility of any employer, even a liquor licensee, is *that* high.

In sum, because Latigona did not commit a violation on La Caffe's premises or otherwise connected to his relationship with La Caffe, and as the case for obliterating the legal distinction between him and La Caffe has not been made here, there is insufficient reason for the Bureau to treat those two as interchangeable and fine La Caffe for Latigona's actions.

Accordingly, the trial court's order is affirmed.

### ORDER

AND NOW, this 6th day of March, 1996, the order of the Philadelphia County Court of Common Pleas, No. 9408–0021, dated November 4, 1994, is hereby affirmed.

DOYLE, J., dissents.