IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marc Benner, Daniel Coyle, and | : | |
| Robert Smith, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 1189 C.D. 2018 |
| | : | ARGUED: June 3, 2019 |
| | : | |
| Pennsylvania Liquor Control Board, | : | |
| Respondent | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                     FILED: July 12, 2019


Marc Benner (Benner), Daniel Coyle (Coyle), and Robert Smith (Smith) (collectively "Neighbors") petition for review from an August 1, 2018 order of the Pennsylvania Liquor Control Board (PLCB). The PLCB denied Neighbors' application to intervene in the person-to-person transfer[1] of a liquor license to be held by an establishment located near their residences. Neighbors argue that the PLCB erred in denying intervenor status and granting the license transfer as it

---

[1] A person-to-person license transfer is one in which the license transfers to a new person or entity for use at the same location. 40 Pa. Code § 7.2.

violated the Liquor Code[2] and the terms of a conditional licensing agreement (CLA)[3] between the previous license holder and the PLCB. Neighbors also contend the Hearing Examiner improperly precluded them from offering evidence at the hearing. After thorough review, we affirm.

## I. Background

In July 2017, S. 19th Business Ventures, LLC (Applicant), through its sole member and owner, Joseph Mitchell (Mitchell), filed with the PLCB an application for a transfer of Restaurant Liquor License R-3706 (License) for premises located at 38-40 South 19th Street, Philadelphia (Premises). Certified Record (C.R.), Item No. 1. At the time the application was filed, the license was held by P&S South 19th Ltd. for an establishment at the same location. Reproduced Record (R.R.) at 61a, 111a. The License was subject to a CLA executed as a result of several citations for violations of the Liquor Code, including sale of alcohol to minors.[4] *Id.* at 61a-62a. Neighbors filed protests to the license transfer application on the basis of "an overabundance of liquor licenses" in close proximity to their places of residence. C.R., Item Nos. 2-3.

A hearing was held in June 2018 to address the objections to the proposed license transfer. C.R., Item No. 9. Neighbors were notified prior to the hearing that the license transfer was considered a person-to-person transfer. C.R., Item No. 11.

---

[2] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 – 10-1001.

[3] A CLA is an agreement between the PLCB and an applicant that places additional restrictions on the license in question. Section 470(a) of the Liquor Code, 47 P.S. § 4-470(a). Such an agreement is binding on the applicant. *Id.*

[4] Section 493(1) of the Liquor Code, 47 P.S. § 4-493(1), in pertinent part, forbids a licensee to sell or allow the sale of liquor or malt or brewed beverages to a minor.

The Hearing Examiner indicated he would accept only testimony relevant to the reputation of the proposed Applicant.[5] *Id.*

Neighbors filed petitions to intervene, alleging the bar previously located on the Premises was a nuisance that negatively impacted the quality of their lives. *Id.*, Item No. 12. Neighbors expressed concern that Applicant's operation of the Premises would continue the nuisance. They pointed out that the building in which the Premises was located was owned by Peter Antipas (Antipas), president of P&S South 19th Ltd., the entity that operated the previous nuisance establishment. *Id.* Neighbors further alleged that Applicant was "known for poor business practices" that threatened Neighbors' well-being. *Id.*

The petitions to intervene were accepted conditionally and Neighbors attended the hearing.[6] C.R., Item No. 13. They were advised that the evidence would be limited to the objections asserted in their petition, *i.e.*, (1) Applicant's alleged failure to file an affidavit attesting that upon approval of the license transfer, Mitchell would resign his other employment and devote full time to the Premises, and (2) Neighbors' contention that they would be directly aggrieved by the license transfer. *Id.* Neighbors did not challenge these evidentiary limitations prior to the hearing.

At the hearing, Benner testified in support of the petitions to intervene. Mitchell testified in rebuttal of Benner's testimony. Counsel for Applicant submitted an affidavit stating that if and when the PLCB granted the license transfer,

---

[5] As discussed below, in assessing a person-to-person license transfer application, only the applicant's reputation and compliance with Liquor Code requirements are relevant.

[6] There is some dispute whether Coyle and Smith attended the hearing. That issue, however, is not material to our decision. For purposes of this opinion, we accept their assertion that they were present.

3

Mitchell would resign his current position and devote his full time and attention to the Premises. Notes of Testimony, 6/19/18 (N.T.), Ex. A1.

Benner testified that he resided in the William Penn House in Philadelphia, Pennsylvania, which is in close proximity to the Premises. N.T. at 11. Over objection, the Hearing Examiner allowed Benner to testify regarding "problems" with the bar previously located on the Premises, to the extent it touched on Mitchell's reputation. *Id.* at 17, 19. However, Benner offered no testimony regarding Mitchell's reputation. Neighbors' counsel merely placed an objection on the record to the Hearing Examiner's preclusion of testimony concerning Mitchell's relationship with Antipas and the alleged history of a prior nuisance establishment located on the Premises.

Neighbors' counsel also argued that the CLA between P&S South 19th Ltd. and the PLCB was relevant to Mitchell's reputation, alleging Mitchell had managed another licensed property owned by Antipas which had incurred citations for Liquor Code violations. *Id.* at 21. Neighbors' counsel further asserted that transfer of the License to Mitchell would violate the CLA, which prohibited transfer of the License to any entity with a direct or indirect connection to Antipas.[7] *Id.* at 22.

The Hearing Examiner expressly limited Mitchell's rebuttal evidence to the issue of his reputation. The Hearing Examiner precluded evidence that the License transfer constituted a bona fide purchase under the CLA. The Hearing Examiner deemed that a matter for the PLCB's determination. *Id.* at 28.

Mitchell testified he had never held a license issued by the PLCB. *Id.* at 26. As of the hearing date, Mitchell was the manager of the Level Room, a nightclub

_____

[7] Paragraph 7(c) of the CLA provides in pertinent part that the License shall be transferred to a bona fide purchaser that has no "direct or indirect connection to P&S South, [or] its current or former officers." Reproduced Record (R.R.) at 113a.

4

owned by Antipas and licensed to sell liquor by the PLCB. *Id.* at 26-27. The Level Room had not been cited for any violations of the Liquor Code during the approximately eight years Mitchell managed that establishment. *Id.* at 26, 36.

Mitchell admitted he was arrested for driving under the influence (DUI) approximately 22 years earlier, when he was 19 years old. *Id.* at 29. He stated it was the only time he was ever arrested and he believed the charge had since been expunged. *Id.*

The Hearing Examiner found the affidavit filed by Mitchell satisfied the requirements of Section 5.23(a) of the PLCB regulations that the manager of a licensed business must devote full time and attention to the licensed business. C.R., Item No. 17, at 6. The Hearing Examiner further found Neighbors failed to meet their burden to show they would be aggrieved by the license transfer. *Id.* at 7. The Hearing Examiner explained Neighbors, through Benner, offered "not a scintilla" of evidence that either the Premises or Mitchell had a poor reputation, or that Neighbors would suffer a legally cognizable injury should the license transfer be granted. *Id.* As Benner's testimony failed to establish any such injury, and Coyle and Smith offered no evidence, the Hearing Examiner deemed all of them unqualified as intervenors. Accordingly, the Hearing Examiner recommended the PLCB grant the application for license transfer. *Id.*

The PLCB approved the license transfer application in August 2018. C.R., Item No. 18. In its supporting opinion, the PLCB found Applicant's initial failure to submit an affidavit attesting that Mitchell would resign from his employment upon approval of the application and devote full time to the licensed Premises was cured by the submission of the required affidavit at the hearing. C.R., Item No. 21, at 9. The PLCB noted that an application involving a "person-to-person" license transfer,

5

unlike a transfer to a new location or an application for a new license, may be refused only if the applicant is not a person of good repute,[8] or if other statutory requirements are not met. C.R., Item No. 21, at 7.

As Neighbors failed to show they would be aggrieved by the license transfer based on the reputation of Mitchell or Applicant, the PLCB agreed with the Hearing Examiner that Neighbors lacked standing to intervene in the license transfer application proceedings. *Id.* at 11-12. The PLCB further found that Mitchell was an individual of good repute as required by the relevant provisions of the Liquor Code and was therefore entitled to the license transfer. *Id.* at 12.

This appeal followed.[9] Applicant has intervened on appeal and opposes Neighbors' arguments.

## II. Issues

Neighbors argue the PLCB erred in concluding they lacked standing to intervene in the license transfer application proceedings. They contend the Hearing Examiner erred in precluding the submission of relevant evidence and testimony at the hearing. Further, Neighbors assert the license transfer approval violated the CLA and the Liquor Code.

---

[8] Pursuant to Section 1.5(a) of the PLCB regulations, when determining whether an applicant is reputable, the PLCB may consider criminal convictions, an applicant's licensing history, and any other factors the PLCB deems relevant. 40 Pa. Code § 1.5(a).

[9] Our scope of review of the PLCB's decision is limited to determining whether constitutional rights were violated, whether the PLCB committed an error of law, whether the practices and procedures of the PLCB were violated, and whether necessary findings of fact were supported by substantial evidence. *Water St. Beverage LTD. v. Pa. Liquor Control Bd.*, 84 A.3d 786 (Pa. Cmwlth. 2014). A decision to grant or deny a petition to intervene is within the sound discretion of the agency involved, and a decision on intervention will not be disturbed unless there has been a manifest abuse of discretion. *Id.*

6

### III. Discussion

### A. Standing to Intervene and Preclusion of Evidence

### 1. Neighbors' Arguments

Neighbors argue the PLCB erred in determining that they lacked standing to intervene. This argument is intertwined with their assertion that the Hearing Examiner improperly limited the scope of testimony at the hearing. Neighbors maintain they should have been permitted to present evidence that they were negatively impacted by the previous establishment located on the Premises.[10]

Neighbors further contend the Hearing Examiner should have admitted testimony regarding the relationship between Antipas and Mitchell. Neighbors assert the license transfer is a sham. Antipas continues to own the real estate on which the Premises is located. Neighbors contend Antipas will retain control over the License by transferring it to Mitchell, an individual Antipas can control as a former employee, and the Premises will continue to operate as a nuisance establishment. Neighbors further assert the CLA between Antipas and the PLCB should have been admitted as evidence at the hearing because its terms were violated by the license transfer and that fact bears on Mitchell's reputation.

As to Coyle and Smith, Neighbors argue the PLCB erred in finding they lacked standing to intervene because they did not present evidence at the hearing. They assert Neighbors' counsel elected to not have them testify because the Hearing Examiner incorrectly prohibited evidence concerning the subject matter of the

---

[10] Neighbors also suggested that they had standing to intervene in the license transfer proceeding because they live within 500 feet of the Premises. The proximity of Neighbors' residences to the Premises might be relevant if location of the licensed premises was at issue. *See* 40 Pa. Code § 17.11(a). Here, however, this section is not applicable, as the license transfer at issue is person-to-person.

testimony they planned to offer, *i.e.*, the prior establishment's nuisance status and its impact on their lives.

## 2. PLCB's Arguments

The PLCB responds that the purpose of the hearing was limited to (1) whether Applicant failed to submit an affidavit attesting that Mitchell would resign his current employment upon approval of the license transfer and devote full time to the licensed premises, and (2) whether Neighbors would be directly aggrieved by the license transfer, based on the reputation of Applicant. The PLCB observes that Neighbors never objected to the scope of the hearing prior to its commencement, and asserts they should not be permitted to raise those objections for the first time on appeal. Further, under Section 17.13(e) of the PLCB regulations, if a party fails to appear or testify at a scheduled hearing, the reasons for his or her protest may be removed from the PLCB's consideration. 40 Pa. Code § 17.13(e). The PLCB maintains Coyle and Smith failed to present any testimony that they were aggrieved by the license transfer application.

## 3. Applicant's Arguments

Applicant, as intervenor on appeal, contends the only issue before the Hearing Examiner was whether Neighbors could show they were directly aggrieved by the license transfer based on the reputation of Mitchell. As Neighbors presented no testimony relating to Mitchell's character or reputation, they were properly denied intervenor status.

## 4. Analysis

In a person-to-person liquor license transfer, the PLCB has no discretion to deny the license transfer application if the proposed new licensee meets all requirements of the Liquor Code. *Arrington v. Pa. Liquor Control Bd.*, 667 A.2d

439, 442 (Pa. Cmwlth. 1995). Upon receipt of the license transfer application and fees, the PLCB is obliged to issue a license if it is satisfied the statements in the application are truthful and certain enumerated conditions are established, including the requirement that an applicant be of good repute. *St. Rd. Bar & Grille, Inc. v. Pa. Liquor Control Bd.*, 876 A.2d 346 (Pa. 2005). The determination of good repute is a matter vested in the discretion of the PLCB. *Id.* Here, therefore, the PLCB was constrained to grant Applicant's license transfer application absent a showing that Applicant or Mitchell suffered from ill repute or that Applicant failed to meet the requirements of the Liquor Code.

Regarding intervention in the application process, "a person seeking to intervene must have a substantial interest, that is, some interest other than the abstract interest of all citizens in having others comply with the law." *Water St. Beverage, LTD. v. Pa. Liquor Control Bd.*, 84 A.3d 786, 792-93 (Pa. Cmwlth. 2014). The interest must be direct, and the person claiming to be aggrieved must show the matter of which he or she complains caused harm to that interest. *Id.* at 793. The interest must be immediate and not a remote consequence. *Id.* Notably, an assertion of potential future harm is not sufficient. *Tacony Civic Ass'n v. Pa. Liquor Control Bd.*, 668 A.2d 584, 589 (Pa. Cmwlth. 1995).

Neighbors were entitled to intervene in the license transfer only upon a showing they would suffer immediate harm to their interests because of the reputation of Applicant or Mitchell or because the requirements for issuance of a license under the Liquor Code had not been met. Neither Coyle nor Smith testified at the hearing. Section 17.12(e) of the PLCB regulations, 40 Pa. Code § 17.12(e), provides that a party's reasons for intervention may be removed from the PLCB's

9

consideration for failure to appear or testify. Therefore, we discern no error in the PLCB's denial of their petitions to intervene.

Neighbors also argue Benner should have been permitted to testify that he was negatively impacted by the previous establishment on the Premises. We discern no merit in this argument.

This Court addressed a similar circumstance in *Burns v. Rebels, Inc.*, 779 A.2d 1245 (Pa. Cmwlth. 2001). Although *Burns* is distinguishable in part, this Court's reasoning in that case is instructive here.

The petitioners in *Burns* appealed a PLCB decision approving a person-to-person transfer of a liquor license. The petitioners asserted they had a direct interest in the license transfer proceeding and would be aggrieved by PLCB action because the health, welfare, peace, and morals of the surrounding neighborhood would be adversely affected by approval of the license transfer. *Id.* Like Neighbors here, the petitioners specifically alleged the transfer was not a bona fide purchase, but rather an attempt to keep the bar in the prior licensee's control and erase the bar's history as a nuisance establishment. *Id.* The petitioners also expressed concern that the prior licensee would continue his involvement in the operation of the bar. *Id.*

The PLCB denied intervenor status to the petitioners on the basis their concerns related to the community in general. *Id.* at 1248. The PLCB explained it could only reject a person-to-person license transfer if it determined the applicant was not of good repute. *Id.*

This Court disagreed because a principal issue in the petition to intervene was whether the transfer was merely an attempt to "fraudulently erase [the bar's] citation history and to avoid further scrutiny" as a nuisance bar. *Id.* at 1250. Accordingly,

10

this Court determined the petitioners had standing to intervene in the license transfer application.[11] *Id.*

A critical difference between the petitions filed here and those filed in *Burns* is that the petitioners in *Burns* asserted *in their petitions to intervene* that the license transfer was a sham transaction. Here, by contrast, the petitions to intervene alleged only that (1) the bar previously located on the Premises was a nuisance establishment that negatively impacted Neighbors' lives; (2) Antipas, the owner of that bar, continues to own the building in which the Premises is located; and (3) Applicant is known for having "poor business practices." C.R., Item No. 12. Neighbors never suggested in their petitions to intervene that the transfer was not a bona fide purchase, nor did they allege Antipas would control the Premises on the basis of a prior relationship with Mitchell. Neighbors made no mention of the CLA between P&S South and the PLCB. Although Neighbors argue on appeal that Antipas's prior establishment is relevant to Mitchell's reputation and future management of the Premises based on his status as a former employee of Antipas, they did not raise this issue in their petitions to intervene. It was only during Benner's hearing testimony that Neighbors' counsel first attempted to expand the bases for Neighbors' objections to the license transfer to include whether Mitchell was a bona fide purchaser or whether the license transfer was a sham.[12]

---

[11] However, this Court nevertheless affirmed the PLCB's decision to grant the license transfer, in part because the PLCB had the authority to take future action if the bar was operated in a manner constituting a nuisance. *Burns v. Rebels, Inc.*, 779 A.2d 1245, 1251 (Pa. Cmwlth. 2001).

[12] Even had Neighbors been permitted to explore this line of questioning, evidence of a relationship between Antipas and Mitchell would not have provided Neighbors the smoking gun they sought. Mitchell presented unrefuted testimony that he previously managed a bar owned by Antipas for approximately eight years with no Liquor Code violations.

11

As these issues were not pleaded in the petitions, evidence at the hearing was properly limited to Mitchell's resignation of his employment and whether Neighbors would be directly aggrieved by the license transfer, "*based on the reputation of the Applicant or [Mitchell]*." C.R., Item No. 13 (emphasis added). Indeed, Neighbors' counsel acknowledged at the outset of the hearing that the issue was one "of reputation, which is the basis for [Neighbors'] objection." N.T., 6/19/18, at 9. As such, the Hearing Examiner properly limited the evidence to Mitchell's reputation. All of Neighbors' other objections were waived.

With regard to Mitchell's reputation, the Hearing Examiner correctly found Neighbors failed to submit evidence that Mitchell was held in disrepute. The only criminal behavior reflected in the record is a decades-old DUI conviction when Mitchell was a teenager, which was presumed expunged. Neighbors likewise presented no evidence that Mitchell engaged in bad business practices. Moreover, Mitchell's reputation could not have been sullied by his purported violation of the CLA, because at the time of the hearing, transfer of the License had not yet been approved. Thus, neither Applicant nor Mitchell was bound by the terms of the CLA.

As the PLCB found, Neighbors have identified only *potential* harm which *might* arise following the license transfer. That potential harm, predicated on Neighbors' *assumption* that a future violation of the CLA between Applicant and the PLCB would occur, is speculative at best. Such speculative harm is insufficient under our prior decisions. *Tacony Civic Ass'n.* Accordingly, the PLCB did not manifestly abuse its discretion in denying the petitions to intervene. *Water St. Beverage.*

12

## B. Alleged CLA and Liquor Code Violations

### 1. Neighbors' Arguments

Next, Neighbors argue the PLCB erred in approving the license transfer application because the transfer violated the CLA and, consequently, the Liquor Code. Neighbors contend the CLA requires the License may only be transferred to a bona fide purchaser with no direct or indirect connection to Antipas. Mitchell formerly managed a bar owned by Antipas, and Neighbors insist that connection prohibits him from holding the License, by the express terms of the CLA. Section 404 of the Liquor Code provides in pertinent part that the restrictions included in a CLA are binding on subsequent holders of the license unless rescinded by the PLCB. 47 P.S. § 4-404. As the PLCB has not rescinded any provisions of the CLA, Neighbors assert the license transfer constitutes a violation thereof and a violation of Section 404 of the Liquor Code.

### 2. PLCB's Arguments

The PLCB responds that the CLA was not part of the certified record, as it was not submitted into evidence at the hearing. Inclusion in the reproduced record filed with this Court does not make the CLA part of the certified record. As a result, for the purposes of appellate review, the CLA does not exist.

Moreover, the CLA is not governed by Section 404 of the Liquor Code, but rather, by Section 470 of the Liquor Code,[13] which provides that a CLA is binding on the applicant, and failure to comply with its terms may support a citation and nonrenewal of the license. Further, regardless of which section of the Liquor Code controls the CLA, the PLCB maintains that no provision in the Liquor Code grants a third party the authority to mandate enforcement of a CLA's provisions.

---

[13] 47 P.S. § 4-470.

### 3. Applicant's Arguments

Applicant asserts that enforcement of the terms of the CLA in conjunction with a person-to-person transfer of the License is within the sole purview of the PLCB, not a petitioner appealing to this Court, and Neighbors have no standing to challenge the PLCB's enforcement of the CLA. Applicant also agrees with the PLCB that the CLA was not part of the certified record filed with this Court, as the CLA was not an issue before the Hearing Examiner. Neighbors' mere attachment of the CLA to their appellate brief cannot make it part of the record.

### 4. Analysis

The PLCB and Applicant are correct that an appellate court is limited to considering those facts that have been duly certified in the record on appeal. *B.K. v. Dep't of Pub. Welfare*, 36 A.3d 649, 657 (Pa. Cmwlth. 2012). A document that is attached to a brief as part of the reproduced record may not be considered by this Court when it is not part of the certified record. *Id.*

Neighbors attempted unsuccessfully to introduce the CLA in evidence at the hearing, in an effort to establish that, due to Mitchell's status as an employee of Antipas, transfer of the License to Applicant would violate the CLA. A knowing violation of the CLA by Mitchell, they reasoned, cast aspersions on his character. However, as discussed above, the License had not yet transferred. Thus, Mitchell was not bound by the terms of the CLA and lacked the capacity to violate its terms.

The Hearing Examiner correctly determined that the CLA was outside the scope of the objections lodged before him. As the CLA was not made a part of the certified record filed with this Court, we cannot consider it. Further, a CLA is a contract between the licensee and the PLCB. *Derry St. Pub, Inc. v. Pa. State Police, Bureau of Liquor Control Enf't*, 111 A.3d 1240, 1253 (Pa. Cmwlth. 2015).

14

Neighbors have cited no legal authority that would permit a third party to enforce the terms of a CLA.

## IV. Conclusion

The Hearing Examiner appropriately limited testimony to that which implicated the reputations of Applicant and Mitchell. Neighbors failed to establish they would be aggrieved by the license transfer on the basis of those reputations. While we can appreciate Neighbors' concern about living in close proximity to a potential nuisance bar, they have not identified any immediate harm which would befall them should the license transfer; they have merely alleged potential harm. For these reasons, we affirm the PLCB.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marc Benner, Daniel Coyle, and | : | |
| Robert Smith, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 1189 C.D. 2018 |
| | : | |
| Pennsylvania Liquor Control Board, | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 12th day of July, 2019, the August 1, 2018 order of the Pennsylvania Liquor Control Board is AFFIRMED.

_____
ELLEN CEISLER, Judge