Dempsey K. ARRINGTON, d/b/a
Arrington's Restaurant,
Appellant,

v.

The PENNSYLVANIA LIQUOR CON-
TROL BOARD and James and Con-
stance Rumball, individually and as rep-
resentatives of a group of record protes-
tants living within 300 feet of the pro-
posed licensed premises.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 30, 1995.

Decided Nov. 2, 1995.

W. Charles Sacco, for appellant.

William J. Hain, for appellees.

Before COLINS, President Judge,
NEWMAN, J., and SILVESTRI, Senior
Judge.

SILVESTRI, Senior Judge.

This is an appeal by Dempsey K. Arring-
ton (Arrington) from the December 15, 1994
order of the Court of Common Pleas of Erie
County (trial court) sustaining the denial by
the Pennsylvania Liquor Control Board
(Board) of the person-to-person transfer of a
restaurant liquor license (license) for the
property located at 831 West 2nd Street,
Erie, PA.

The property is in a residential area of the
City of Erie and since 1930 has been used for
the restaurant liquor business, which is a
permitted use. Situate on the property is a
two-story building—the first floor is used for
the conduct of the restaurant liquor business
and the second floor as a residence.[1]

---

1. Arrington has purchased the property and now resides in the second floor residence. (R.R. 176a.)

The prior licensee was Barbara Freitas, trading as Rick's (Freitas).[2] On a day not appearing of record, but in January of 1989, Freitas filed a voluntary petition in bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania.[3] The sole asset in the bankrupt estate was the license (R.R. 68a–69a) which had been placed with the Board for safekeeping (R.R. 9a); the trustee in bankruptcy entered into an agreement to sell the license to Arrington, which agreement was approved by the bankruptcy court.[4] (R.R. 73a.)

Arrington, on April 21, 1990, made application to the Board for a person-to-person transfer of the license. By reason of protests filed by residents within a five hundred foot (500) radius of the property, the Board scheduled a hearing on Arrington's application before a hearing examiner.

At the hearing, the Board presented evidence through Donald J. Clark (Clark), its licensing investigator, who investigated Arrington and viewed and checked the property personally. (R.R. 12a.) In particular, the Board established that the premises "were previously licensed" and "meet all the requirements of the Board" (R.R. 10a); "Mr. Arrington is a responsible individual with a good reputation;" that the premises "are not located within 200 feet of any other establishments licensed by this Board" nor "within 300 feet of any restrictive institutions as defined by the Board" (R.R. 11a); as to a facility housing handicapped persons, "it was well over the 300 foot" restriction and that "I quit measuring at 300 feet. It would be around 500 feet." (R.R. 132a–133a); and that "[t]he applicant and premises qualify ..." (R.R. 21a.).[5]

Following the testimony of Clark before the hearing examiner, the Board rested and five representative protestors[6] testified in opposition to the license transfer. Upon conclusion of the testimony, the Board entered an order and an opinion on April 26, 1991 denying the transfer of the person-to-person transfer for the reason:

> The approval of this application would adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet.

Section 464 of the Liquor Code (Code)[7] provides that on appeal to the trial court by "any applicant who is aggrieved by the refusal of the board to transfer such license" the court shall hear the application *de novo* on questions of fact, administrative discretion and such other matters as are involved. The court shall either sustain or over-rule the action of the board and either order or deny the transfer to the applicant. A *de novo* hearing was held before the trial court on the 4th day of October 1993.[8]

2. Freitas purchased the license from Dorothy Erickson (Erickson), who was the licensee from 1972 to 1986; Erickson also sold the property to Freitas subject to a purchase money mortgage.

3. The docket number of the bankruptcy proceedings does not appear in the record.

4. The legislature, by amendment, made special provisions for transfer of licenses in the event of bankruptcy. See 47 P.S. 4-468(b.1).

5. Clark further testified at the *de novo* hearing before the trial court that at the time of the person-to-person transfer of the same license to Freitas, which he also investigated, there were no protests filed with the Board. Specifically, the following exchange occurred.

> The Court: Has there been anywhere any protests that you know of from the Liquor Control Board either from the time that the previous owner owned it or also when the Freitases owned it prior to going to bankruptcy about parking or otherwise? Would you have knowledge of that, sir?
> Mr. Clark: Yes, sir. It would be reflected on the office files. We have no protests listed.
> The Court: Pardon me.
> Mr. Clark: We have no protests listed.
> (R.R. 140a).

The record fails to reveal that the protestors herein or anyone else, at any time, filed complaints with the City of Erie police or that the police were ever called to the premises because of any violations of law occurring inside or in close proximity to the premises.

6. The hearing examiner noted there were approximately forty (40) persons present some of whom opposed the transfer and others favored it. R.R. 5a.

7. Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4-464.

8. The *de novo* hearing consisted of testimony taken before Judge Levin and a view of the premises. Upon return from the view and with-

The trial court by order dated December 15, 1994 sustained the Board's denial of Arrington's application for a person-to-person transfer. The rationale for the trial court's denial is as follows.

After a thorough review of the transcripts and review of the hearing testimony presented on October 4, 1993, no new facts were elicited that differ from those found by the Board contained in their Opinion and Order of April 26, 1991. Additionally, this Court is unable to discern a clear abuse of discretion. Therefore, guided by the principles as set forth in *Byer, supra,* this Court will not substitute its own discretion for that of the Board.

The trial court did not set forth any of the evidence presented to it at the *de novo* hearing; neither did it make any credibility determinations or findings of fact or what the evidence was which made it "unable to discern a clear abuse of discretion."

▇▇▇ In *Darlene Bar, Inc. v. Pennsylvania Liquor Control Board,* 51 Pa.Cmwlth. 274, 414 A.2d 721 (1980), we construed that portion of Section 464 of the Code relating to the function of the trial court in appeals from adverse decisions of the Board and held:

The law has been interpreted, where no new facts are presented to the court, to require that the Board decision be accepted unless a clear abuse of discretion is found. *Manns Liquor License Case,* 207 Pa.Super. 340, 217 A.2d 848 (1966). The court may not substitute its discretion for that of the Board and may reverse the Board only if it has committed a clear abuse of discretion or when *de novo* facts varying from those accepted by the Board are found. *Application of Hohl,* 20 Pa.Commonwealth Ct. 490, 342 A.2d 493 (1975).

*Pennsylvania Liquor Control Board v. Can, Inc.,* 664 A.2d 695 (Pa.Cmwlth.1995); *Ball*

*Park's Main Course v. Pennsylvania Liquor Control Board,* 163 Pa.Cmwlth. 636, 641 A.2d 713 (1994), *petition for allowance of appeal denied,* 539 Pa. 655, 651 A.2d 542 (1994); *Byer v. Pennsylvania Liquor Control Board,* 73 Pa.Cmwlth. 336, 457 A.2d 1344 (1983). However, our scope of review is whether the trial court committed an error of law, abused its discretion or issued an order unsupported by sufficient evidence of record. *New Sorrento, Inc. v. Pennsylvania Liquor Control Board,* 64 Pa.Cmwlth. 422, 440 A.2d 676 (1982).

In *Centrum Prime Meats, Inc. v. Pennsylvania Liquor Control Board,* 71 Pa.Cmwlth. 560, 455 A.2d 742, 745 (1983), which involved the transfer of a license, we cited *Mielcuszny v. Rosol,* 317 Pa. 91, 93, 176 A. 236, 237 (1934), for the definition of an abuse of discretion as "encompassing errors of judgment, overriding or misapplying the law, a manifestly unreasonable exercise of judgment, or a final result that evidences partiality, prejudice, bias, or ill-will." *See also Pennsylvania Liquor Control Board v. George Roscoe, Inc.,* 60 Pa.Cmwlth. 362, 431 A.2d 1119 (1981).

▇▇▇ There is no dispute that the application of Arrington was for a person-to-person transfer of a license for the conduct of the restaurant liquor business at the same location since 1930 in the same municipality. The Board, under the Code, was duty bound to grant the application under the evidence presented by Clark, the Board's investigator, before the hearing examiner. Because the Board committed a blatant abuse of discretion by overriding and misapplying the law relative to person-to-person transfers as set forth in the first parts of Section 468 [9] and Section 404 [10] of the Code, which the trial court also overlooked, thus abusing its discretion, we will reverse the trial court and direct the Board to grant the application of Arrington for the transfer of said license.

out completing the testimony, a settlement was proposed which counsel for all the parties was to draft in the form of a court order, sign the same and submit to Judge Levin for his signature. When the draft order was not forthcoming, Judge Levin, without notice to the parties entered an order reversing the Board and directed the application for the license be approved. The protestors appealed to us at 2041 C.D. 1991 and by

opinion and order dated October 1, 1992, we vacated Judge Levin's order and remanded to the trial court to complete the taking of testimony. The case was assigned to Judge Joyce, who completed the taking of testimony.

9. 47 P.S. § 4–468.

10. 47 P.S. § 4–404.

Under Article IV, entitled, *inter alia,* "Licenses and Regulations", Section 468(a) of the Code provides:

[T]he board upon payment of the transfer fee and the execution of a new bond, is hereby authorized to transfer any license issued, by it under the provision of this Article from one person to another—within the same municipality.

Section 404 of the same Article entitled, *inter alia,* "Issuance of ... restaurant ... licenses", states, as herein relevant, as follows:

Upon receipt of the application, ... and upon being satisfied of the truth of the statements in the application.... and that the applicant is a person of good repute, that the premises applied for meet all the requirements of this act and the regulations of the board, that the applicant seeks a license for a ... restaurant ... as defined in this act, and that the issuance of such license is not prohibited by any of the provisions of this act, the board shall, in the case of a ... restaurant, grant and issue to the applicant a liquor license ...

We construed the foregoing first part of Section 404 in *Lousil, Inc. v. Pennsylvania Liquor Control Board,* 5 Pa.Cmwlth. 33, 288 A.2d 560 (1972) and in *Pennsylvania Liquor Control Board v. Herrmann Brothers, Inc.,* 92 Pa.Cmwlth. 196, 498 A.2d 1017 (1985).

In *Lousil, Inc.,* Jocks, Inc. was the holder of a restaurant liquor license for premises in Philadelphia. The premises had been licensed since the repeal of prohibition, met all the regulations of the Code and of the Board and the transferee was fully qualified to hold a license. However, there was at the time of the application for transfer of the license for said premises to *Lousil, Inc.* a church and a school within 300 feet of the premises. The Board after hearing protests from public officials, as well as residents in the neighborhood, refused the transfer of the license by reason of "granting of the license will adversely affect the welfare, peace, health and morals of the neighborhood within a radius of 500'." The court of common pleas, after hearing, affirmed the Board.

Prior to *Lousil, Inc.,* under Section 404, as set forth in the Code of 1951, the Board had no general discretion or power to deny a transfer of a license to a new location as determined by the Supreme Court in *In re Appeal of Obradovich,* 386 Pa. 342, 126 A.2d 435 (1956). In *Lousil, Inc.,* 288 A.2d at 562–563, in reversing the court of common pleas, we wrote:

Doubtless in response to *Obradovich* holding, Section 404 was amended by the Act of August 25, 1959, P.L. 746, by the addition of a further proviso:

"And provided further, That the board shall refuse any application *for a new license or the transfer of any license to a new location* if, in the board's opinion, such new license or transfer would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed."

(Emphasis added).

Hence the Legislature provided the ground for denying the *transfer* (or an original license) held unavailable *in Obradovich.* But it failed to include within the scope of this new grant of power transfers of a license from person to person, as distinguished from transfers to new locations. In short, Section 404 clearly and unequivocally now provides *pertinently to* this case that the Board must *issue a restaurant license to a qualified* person and *for a qualified premises* either *originally or by transfer;* provided that the Board may refuse the application in the case of a new license or the transfer to a new location if the premises is within 300 feet of a church, hospital, school, etc., and provided further that it must refuse the application in the case of a new license or transfer to a new location if it is of the opinion that such new license or transfer to a new location would be detrimental to the interest of the neighborhood within 500 feet. Since the premises and transferee here admittedly meet the Code and *regulation requirements and the transfer is not to a new location, the Board has no discretion to refuse the transfer because of the*

*present proximity to church or school and it is under no compulsion to refuse because in its opinion the neighborhood is suffering* because of the presence of the licensed premises.
(Emphasis ours). (Footnote omitted).

Again, in *Herrmann Brothers, Inc.,* we had occasion to address Section 404 of the Code wherein Bill S. Memis (Memis) in April 1983 bought the premises used for the operation of a restaurant liquor license business; he did not buy the license for the premises which was held by A.R.F. Bar, Inc., the previous owner, for the reason that the previous owner's license was scheduled to be revoked because of a 1981 violation. Memis then purchased a restaurant liquor license from Herrmann Brothers, Inc. intending to transfer the license to the premises he bought from A.R.F. Bar, Inc.

The Herrmann Brothers, Inc. license had been in safekeeping since 1978. Memis applied to the Board for a person-to-person transfer of the said license. The Board refused the transfer on the basis that the premises was within 300 feet of a playground and "approval of the transfer of the license would adversely affect the health, welfare, morals and peace of the neighborhood within a radius of 500 feet."

The trial court reversed the Board and we affirmed the trial court. After setting forth the first part of Section 404 we wrote:

The Board next argues that Section 404 of the Liquor Code allows it discretion to deny this transfer as it views the transfer as one *"to a new location."* In *Lousil, Inc. v. Pennsylvania Liquor Control Board,* 5 Pa.Commonwealth 33, 288 A.2d 560 (1972), we reversed the Board's *denial of an application* to transfer a license on facts remarkable (sic) similar to those of this case. There, a license holder proposed to transfer the license at the existing premises *to a new licensee.* The Board denied the application, citing the fact that a church and a school were within 300 feet of the premises. We held, however, that the transfer *was not to a new* location and, therefore, the existence of a school *or church* erected *after the original* licensing (again, shortly after the repeal of Prohibi-

tion) *offered* no discretion *to the Board* to deny the transfer *provided* the transferee met *all other requirements of the Liquor Code.*

In the present case, the Board does not challenge the court's holding that the transferee meets all other requirements of the Liquor Code. The Board argues only that the revocation of A.R.F. Bar, Inc.'s license somehow changes this transfer to one to a new location. We believe the Board's view is too restrictive. Here, the surrendering of the A.R.F. Bar, Inc. license to the Board for revocation was part of the same proceeding whereby Mr. Memis attempted to open his establishment with a "clean" license. The premises were never used for any other purpose. We believe that *Lousil* is *applicable to the present case.* The trial court, therefore, committed no error of law in sustaining applicant's appeal and reversing the Board's denial of the transfer. 498 A.2d at 1019. (Emphasis ours).

■ In addition to our belief that a transfer is mandated by the first part of Section 404 and by *Lousil, Inc.* and *Herrmann Brothers, Inc.,* we also find that the Board improperly granted protestors party status and in giving them a hearing.

40 Pa.Code § 17.1 et seq. governs the practice and procedure before the Board regarding license applications. Section 17.11 sets forth the procedure for license application protest. Section 17.11(a) states that residents within 200 feet of the premises, protected institutions within 300 feet of the premises and a resident within a radius of 500 feet of the premises may file a protest with the Board. However, such protest can be made only when an application has been filed for a *new* retail liquor license or the transfer of such license to a premises not then licensed. Such is not the case herein.

Section 17.11(b) provides for a protest when the qualifications of an applicant are at issue. The qualifications of Arrington are not challenged herein.

Section 17.11(e) provides as follows:

Only valid protests brought under subsection (a), relating to when location is at

issue, render the protestant a party to the proceeding. A separate petition to intervene is not required for this purpose. Other protestants ... shall file a petition to intervene under §§ 17.12 and 17.13 (relating to intervention in license application matters; and protests/intervention procedures), in order to become a party.

It was clear to the Board that this was an application for a person-to-person transfer and not an application "for a new retail liquor license" or "the transfer of" a retail liquor license "to a premises not then licensed." This being so, the protestants herein under Board rules, which it ignored, were required to petition to intervene consistent with the requisites set forth in 40 Pa.Code § 17.13. The record before us is devoid of any petitions to intervene being filed by the protestors herein; thus, the participation of the protestants in the hearing before the hearing examiner of the Board was not consistent with established published procedures of the Board and they should not have been permitted to participate therein as parties.

The Board, having decided to conduct a hearing and allowing the protestors to participate, gave no directions of the scope of the hearing to the hearing examiner; thus, the Board, by its opinion, gave approval to the reception of evidence by the protestors, which was directed to the first two provisos in section 404, which follow the first part of section 404, *supra.*

The two provisos [11] specifically state that *in case of any new license or the transfer of any license to a new location,* the Board *may,* in its discretion, refuse or grant the application if such place is within the stated prohibited distances of protected institutions, and *shall refuse* the application for a new license or transfer to a new location if such would be detrimental to the welfare, health, peace, and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed.

The Board refused the person-to-person transfer application of Arrington which was neither a new license nor a transfer to a new location for the sole stated reason that "approval of Arrington's application would adversely affect the health, welfare, peace, and morals of the neighborhood within a radius of 500 feet." In so doing, the Board committed an error of law, since such decision was not only contrary to the specific language of the first portion of section 404, as interpreted by us in *Lousil, Inc.* and *Herrmann Brothers, Inc.,* but also in relying on the first two provisos of section 404 which were not applicable herein.

Additionally, the Board was in error in denying Arrington's application since there was no substantial competent evidence to support the Board's finding of facts to support its conclusion that "approval of Arrington's application ... would adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet."

We first note that the Board, in its opinion denying Arrington's application, referred to Arrington's application on seven occasions as one for a "person-to-person transfer" of the restaurant liquor license. (*See* Board Opinion, Exhibit D to Brief of Appellants). There is nothing in the record before the Board to demonstrate that Arrington's application was for a "new license" or for "the transfer of said license to a new location."

The Board further stated in its opinion, Findings of Fact (FOF) 9 and 10, that "there is a terrible parking problem in the neighborhood. Most of the residents must rely on on-street parking, and there frequently is not adequate space for the residents." Under the previous ownership "most of its patrons come from outside the neighborhood, requiring them to travel by car and further increasing traffic and parking problems;" that since the premises has not been in operation for the past two and one-half years, "there has been a noticeable improvement in the parking and traffic problems." The Board seized on the concern expressed by the representative protestors relative to parking and traffic to arrive at the "opinion" that such would be "detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet" without stating what the detriment would be,

11. The final two provisos of section 404 are not herein applicable.

particularly since there were no protests, complaints or any action taken to the Board or the appropriate City of Erie officials during the sixty years, from 1930 until Arrington applied for the person-to-person transfer in 1990.

Assuming that there were the alleged "parking and traffic problems," both the Board and the trial court overlooked or disregarded our case law in this area. In *K & K Enterprises, Inc. v. Pennsylvania Liquor Control Board,* 145 Pa.Cmwlth. 118, 602 A.2d 476 (1992) we stated:

> The legislature has established the principle that a licensed establishment is not ordinarily detrimental to the welfare, health and morals of the inhabitants of the neighborhood. Furthermore, a transfer of a liquor license will be detrimental to a community only in cases where the nature of the neighborhood and the nature of the place to be licensed are such that the issuance would be detrimental. *Parks v. Pennsylvania Liquor Control Board,* 44 Pa.Commonwealth Ct. 87, 403 A.2d 628 (1979).

We then cited *Logan Square Neighborhood Association Appeal,* 102 Pa.Cmwlth. 224, 517 A.2d 581 (1986), *petition for allowance of appeal denied,* 517 Pa. 611, 536 A.2d 1335 (1987) wherein we affirmed the trial court's reversing the Board's denial of the transfer of an existing license, where as herein protestors "objected to *parking problems, noise,* restaurant fumes, *traffic problems* and the perceived threat to their quiet residential neighborhood." (Emphasis added.) In our affirmance of the trial court, we stated "there was no legal correlation between alcoholic consumption and dangerous driving per se." As there was no evidence of such correlation in *Logan Square,* such is also the case herein. *See also Parks v. Pennsylvania Liquor Control Board,* 44 Pa.Cmwlth. 87, 403 A.2d 628 (1979); *In re Application of Barone,* 43 Pa.Cmwlth. 446, 403 A.2d 148 (1979); *Paxon Maymar, Inc. v. Pennsylvania Liquor Con-* *trol Board,* 11 Pa.Cmwlth. 136, 312 A.2d 115 (1973).

In FOF 11 and 12, the Board found that, in the 2½ year period that the restaurant premises has been closed, a housing facility for handicapped persons (Independence House, R.R. 25a) opened a block away and about 36 people in wheelchairs now live there; further, the handicapped in wheelchairs must use the vehicle traffic ways because of the deteriorated condition of the brick sidewalk and the lack of wheelchair-access curb cuts. The Board then concludes that "[a]dding more traffic and further creating parking congestion problems will significantly increase the risk to the neighbors in wheelchairs who must rely on the streets for mobility." The Board cites pages 25–26, 32, 40–42 and 50 of the transcript [12] of the hearing before the hearing examiner for testimony of protestors to support FOF 11 and 12.

At page 25, the protestor, Mr. Rumball, testified that Independence House was two blocks away, which he changed to "one long block, I suppose." At pages 25, 26 and 50, there is testimony that the streets and sidewalks are not handicapped accessed. At page 26, Mr. Rumball further testified when asked by the hearing examiner if Independence House was within 500 feet, to which he replied "Very close to it, I couldn't swear. I'd have to measure it really." [13] When asked how long Independence House has been there, Mr. Rumball replied, "I don't know." He was then asked if it was there when the bar was being run by the prior ownership, he replied, "I believe." Although the Board also cites to pages 40–42, there is nothing therein to establish either when Independence House was established or the radius distance from the premises to be licensed. There is not a scintilla of evidence to support the Board's FOF 11, particularly that it was within a 500 foot radius of the premises to be licensed. The error of the Board and of the trial court in affirming the Board is manifest.

---

12. In the Board's opinion, the FOF are followed by page numbers to the testimony before the hearing examiner.

13. The Board presented evidence through its investigator Mr. Clark that Independence House was a protected institution and it was "well over the 300 foot distance; he quit measuring at 300 feet." (R.R. 132a–133a.)

The Board, as approved by the trial court, indirectly places upon Arrington the duty of making curb cuts and to repair the sidewalks and streets within a radius of 500 feet of the premises. There is nothing in the evidence, nor the Code, connecting the absence of curb cuts or the deteriorated conditions of the streets and sidewalks at or near Independence House that obligates Arrington to remedy the alleged conditions in order to have his application approved.

At FOF 13, the Board, as approved by the trial court, found that "there are no playgrounds or other play areas for children of which there are over 100 children under the age of 16 within 500 feet of the licensed establishment and would be subject to greater danger with increased traffic and parking congestion." The Board, with the approval of the trial court, cites pages 37 and 63–64 for testimony in support thereof.

At page 37, a protestor testified that "[a] lot of people that live in that neighborhood have young children and we don't have a playground and our young children play in the street. They ride skate boards" and another protestor, Mr. Mahoney, at pages 63–64, testified:

> [T]here's a large concentration of children in the neighborhood under the age of sixteen ... I would have to say purely speculatory that there are within hundred foot radius of the tavern building I would say there are well over a hundred children under sixteen.

The Board now has the authority to deny the request of any application for a new license or the transfer of any license to a new location "if such place proposed to be licensed is within three hundred feet of any ... public playground, . . . ." The Board and the trial court have now, without any legislative authority or case law, denied the application of Arrington for a person-to-person transfer because there are no playgrounds within five hundred feet of the premises. To state such proposition is to reject it. Since an applicant for the transfer of a license is under no duty to provide recreational facilities either in the nature of a playground or otherwise to minimize children playing in the streets, an appli-

cant is not to be penalized for the absence thereof.

Mr. Mahoney, who testified at pages 63–64, and upon whose testimony relative to the number of children in the neighborhood the Board relied, also testified as follows:

BY Mr. HAIN:

Q  Mr. Mahoney, you heard a number of witnesses testify today as to why they would not want this bar license to be granted in this case. Do you have any new testimony that you can offer to us at this time as to why you do not feel it would be appropriate to grant the transfer?

. . . .

A  The parking thing, as far as I'm concerned, is irrelevant in my sense because we do have a driveway. But my concern is, I'm not a bigot by any means, but the concentration of the neighborhood is white and the biggest majority of the people, as far as I'm concerned, won't frequent the bar on the fact that Mr. Arrington is black. So that—to me I am afraid that he's going to have to bring an element from outside the neighborhood and that is the element that we are afraid of.

Q  And you feel that would create more of a parking problem I understand?

A  It will create a parking problem. But I am worried about property values going down as a result of people not wanting to invest in the neighborhood as a result of the tavern being open. Whether it's a white person or a black person is irrelevant. But we bought our property on the chance that with the hundred and thirty thousand dollar condominiums going up that one day our property will be worth a large sum of money and if people aren't willing to come into the neighborhood, then that's obviously not going to happen.

(R.R. 64a–65a.)

The legislature has established the principle that a licensed establishment is not ordinarily detrimental to the welfare, health and morals of the neighborhood and that a transfer will be detrimental only in a case where the nature of the establishment to be licensed will adversely affect the nature and

character of its neighborhood. *Logan Square.*

The Board offered undisputed evidence that both Arrington and the premises qualified under the Board's approval of the application of the person-to-person transfer by Arrington. The Board, without any foundation in the record before the hearing examiner, denied Arrington's application based on the second proviso of section 404 of the Code in that—

The approval of this application would adversely affect the health, welfare, peace, and morals within a radius of 500 feet.

The Board's decision and order, as approved by the trial court, is devoid of any evidence in the record to support its denial of Arrington's application for the person-to-person transfer. The decision of the Board was an obvious abuse of discretion in that it misapplied the law, made findings of fact not supported by the testimony, was an unreasonable exercise of judgment, and arrived at a result which evinces partiality, prejudice and ill-will. The trial court, in affirming the Board, also abused its discretion, in the same manner, in not finding the Board abused its discretion and not reversing the Board.

Accordingly, we will reverse the trial court and direct the Board to grant the application of Arrington for the person-to-person transfer.

*ORDER*

AND NOW, this 2nd day of November, 1995, it is ORDERED as follows:

1. The order of the trial court dated December 15, 1994 is reversed.

2. The Pennsylvania Liquor Control Board is directed to approve the application of Dempsey K. Arrington for person-to-person transfer of liquor license R–

13265 to him from Barbara Ann Freitas, by and through Thomas P. Agresti, Trustee in Bankruptcy.